Kimball et al.<br><i>vs.</i><br>Wilson.

------>>●●●<<------

## NATHANIEL BROWN <i>vs.</i> ISAAC DINSMOOR.

When a tax is assessed upon the land of a non-resident, the number of the range and lot, or some other description of the land taxed, must, in all cases, be inserted in the list.

An action on the case, in the nature of waste, lies in favor of him, who has a reversionary interest in land, against a stranger, who cuts small trees, suitable for hoop poles, upon the land.

THIS was an action on the case. The plaintiff alleged in his declaration, that a certain farm in Chester, being in the possession and occupation of <i>J. Couch</i>, as tenant thereof to the said <i>Brown</i>, and the reversion thereof being in the said <i>Brown</i>, the said <i>Dinsmoor</i> maintained a dam across a certain brook, by which said farm was overflown, from the 22d August, 1817, to 22d August, 1823, and the trees of the plaintiff killed, and part of the farm made spongy and rotten ; and that the defendant entered upon said farm, and cut three thousand small trees ; by reason of which the said <i>Brown</i> was injured in his reversionary interest.

The cause was tried here, at February term, 1824, upon the general issue, and a verdict taken for the plaintiff, subject to the opinion of the court upon the following case.

<i>S. N. Gage</i>, being seized of the farm mentioned in the declaration, on the 31st December, 1799, conveyed the same, by deed, to the plaintiff, who entered and became seized, as the law requires.

The defendant claimed to be seized of the same farm, by virtue of a sale made by the collector of Chester, for the non-payment of the state, county, and town taxes, assessed upon the same in the year 1813.

The assessment of the taxes, and the sale of the land, appeared to be legal, unless the following objections, or some of them, are well founded.

1. The only authority, which the selectmen of Chester had to assess the town tax, was a vote in the following words :

" The 10th article was left with the selectmen, to raise

" so much money, to defray town charges, as they shall think " necessary."

2. *Brown*, in 1813, was an inhabitant of Londonderry, and was taxed as a nonresident, and the assessment stood in the list, as follows :

| | Buildings. | Orchard. | Tillage. | Mowing. | Past'ng. | State. | Town. | School. | County. | Highway. |
|---|---|---|---|---|---|---|---|---|---|---|
| *Nath. Brown*, Londonderry, | 40 | 1-3 | $1\frac{1}{4}$ | 3 | 16 | 38 | 193 | 96 | 19 | 203 |

3. The list delivered to the collector, by the selectmen, was dated " June, 1813," and there was no evidence, that it was delivered to the collector, previously to that month ; and the collector had no warrant to collect the taxes assessed upon nonresidents, unless the said list was in law a warrant.

Within the time alleged in the declaration, the defendant entered upon the farm, which was in the possession of *J. Couch*, as tenant under the plaintiff, and cut and carried away several small trees, suitable for hoops.

*French*, for the plaintiff.

*S. D. Bell*, for the defendant.

RICHARDSON, C. J. delivered the opinion of the court.

One question in this case depends upon the construction of the statute, entitled " an act for taxing the lands and build- " ings of nonresidents," which enacts, that " the selectmen, " &c., shall make out in writing under their hands, and deliv- " er the same to the several collectors, on or before the 30th " May, annually, a list of all such assessments, and insert " therein the name of the owner, if known, otherwise the " name of the original proprietor, and the number of acres " taxed, and the number of the lot and range ; and the pro- " portion of each assessment to each lot, or tract, of land " taxed, shall be set against said lot, or tract of land, in the " list aforesaid ; and if any building of a nonresident shall be " taxed, the number of the lot, or other description of the " land whereon it stands, shall be mentioned in said list. " And if the name of the owner and the original proprietor " of any land be unknown, the quantity of land, the number " of the range and lot, if lotted, otherwise such description

"of the land taxed, as it is usually known by, being inserted "in said list, shall be a sufficient description of said land." If this clause in the statute has made it necessary to insert in the list, delivered to the collector, the number of the range and lot, or some other description of the land taxed, the title, under which this defendant claims to hold the land in dispute, must fail ; for the list, he produces, is defective in this respect ; and no title, resting upon a sale by virtue of a public statute, can be legal, unless all the directions of the statute have been substantially pursued.    14 *Mass. Rep.* 177, *Blossom vs. Cannon.*—4 *Cranch.* 403, *Slead's executors vs. Course* —18 *John.* 441, *Jackson vs. Morse.*

On the part of the defendant it is contended, that, where the owner is known, the statute requires no description of the land taxed ; that it is only in cases, where the owner is unknown, that the number of the lot and range, or some description of the land, is required to be inserted.  But the plaintiff contends, that not only the name of the owner, or original proprietor, if known, must be inserted, but also the number of acres taxed, and the number of the range and lot ; and such is the language of the statute, that it may be construed either way ; and the question to be decided is, which is the true construction ?

It appears to us, that it was the intention of the legislature, that the number of the range and lot, or some description of the land taxed, should, in all cases, be inserted in the list delivered to the collector.  There are several reasons, upon which we ground this opinion.

In the first place, it is fit and proper, that the non-resident should be able to ascertain, from the list itself, that the tax, which is set to him, has been assessed in fact upon his land, and not upon the land of another.   He seems entitled to know specifically for what he is taxed, and that there is no mistake. We should therefore expect to find in the statute some provision, requiring a description of the land taxed.

Another argument in favor of this construction is this ; the statute requires the proportion of each assessment, to each lot, to be set against such lot in the list, which is in fact a requirement, that each lot shall be taxed severally.  The ob-

Brown
*vs.*
Dinsmoor.

ject of this provision was to enable any person, who should become the owner of a lot, to pay the taxes, which might have been assessed upon it, and thereby prevent a sale of it : and the fifth section of the statute enacts, that if more than one person shall be interested in any lot, or tract of land, each one may pay his proportion of taxes, and the share of the delinquent only shall be sold.   These provisions seem to us to indicate an intention in the legislature, that each lot should be liable to sale only for the taxes assessed upon it ; and we have no doubt, such was the intention.   It is obvious from the provisions of the statute, that the tax binds the land, whoever may become the owner.   In a country, where the title to real estate passes from one to another as often as it does among us, it would be extremely inconvenient and mischievous to render one lot of land liable to be sold for taxes assessed upon another, merely because they happened to belong to the same person, when the tax was assessed.   It is then important, that the list should contain a description of the land taxed, that the collector may know what land he is authorized to sell ; and that it may appear, that the land sold was the land, upon which the tax was assessed.

The statute requires the collector, previous to the sale, to publish in a newspaper, and post up in the town, where the land lies, a notification, which shall contain the same description of the land taxed, as the act requires should be made in the lists, and also the time and place of sale.   As one object of the notification must be to give notice to all, who may be disposed to purchase, some description of the land to be sold would seem to be useful, and not less useful, in this respect, when the owner was known, than when he was unknown.

Another argument, in favor of this construction, is the provision in the act, which expressly declares, that if any building of a non-resident shall be taxed, the number of the lot, or other description of the land, whereon it stands, shall be mentioned in said list.   There does not seem to us to be any necessity of a description of the lot in this instance, which must not exist with equal force, when the lot itself is taxed.

The provisions of former statutes seem to have some bearing on this question. The statute of March 16, 1780, (1 *N. H. Laws* 520,) enacted, that there should be sent to the person appointed to receive the taxes at Exeter, " a " copy attested by the selectmen of the list of taxes," &c., viz. " the owner's name, where known, and where unknown, " the name of the original proprietor, or owner, together " with the number of the lots, quantity of land, and the several " sums, at which the said land shall be assessed." Now in this clause it does not admit of a question, that the intention was, that the number of the lots and the quantity of land should be inserted, whether the owner was known, or unknown. They are coupled directly with the sums assessed, and stand in the same relation to the rest of the sentence ; and without the insertion of the sums assessed, the list would have been useless. A similar provision was inserted in the statute of June 11, 1784, *sec.* 5, (1 *N. H. Laws* 527,) and the statute of February 7, 1789, *sec.* 5, (1 *N. H. Laws* 536.)— And it sems to us, that if the legislature had intended to alter the law, in this respect, in the statute now under consideration, they would have used language much more explicit, and would not have left it doubtful, whether they had, or had not, effected their intention.

We are, therefore, of opinion, that the title upon which the defendant relies, is defective, because the list, delivered to the collector, contained no description whatever of the land taxed. It is, therefore, unnecessary to examine the other objections.

Another question, which this case presents for decision, is, whether the acts, done by the defendant, were an injury to the inheritance of the plaintiff. For if the plaintiff's reversionary interest has not been injured, this action cannot be maintained. Cases of this description have not very frequently occurred ; but the principles, which have been laid down and established in relation to waste, afford a very satisfactory solution of this question.

Waste is defined in the books to be " a spoil or destruction " in houses, gardens, trees, or other corporeal hereditaments, " to the disherison of him, that hath the remainder or rever-

Brown
vs.
Dinsmoor.

"sion in fee simple or feetail." *2 Black. Com.* 281.— *3 ditto* 224.—*Comyn's Digest, " Waste"* C 2.—*Coke Litt.* 53, *a.*

Whatever act then can, under any circumstances, be deemed waste, must be an act injurious to the inheritance. But the converse of this proposition is not true. For many acts, done by a tenant in the common course of husbandry, would not be deemed waste, which, if done by a stranger, would be deemed injurious to the inheritance.

It is said, " if a man fell trees, it is waste, and if he suffer " the germins upon the roots of the trees to be again " newly destroyed, the same is new waste." *Fitz-Herb. N. B.* 59.—*Comyn's Digest " Waste"* D 5.—*Coke Litt.* 53, *a.*

If the plaintiff's tenant had cut the trees, which the defendant in this case took, and had sold them, there would be no doubt, that it would be waste. *2 N. H. Rep.* 430, *Elliot vs. Smith.* We are, therefore, of opinion, that the cutting of the trees, mentioned in the declaration, must be deemed an injury to the inheritance, for which an action on the case may be maintained.