### IN THE

## SUPERIOR COURT OF JUDICATURE,

### FOR THE

## COUNTY OF HILLSBOROUGH, DECEMBER TERM,

### A. D. 1834.

---

## THE SOUHEGAN NAIL, COTTON AND WOOLEN FACTORY *vs.* MCCONIHE.

THE legislature granted a charter to a corporation, authorizing them to carry on the manufacture of nails, and of cotton and woolen cloths, and the business necessarily connected therewith ; and provided that all buildings, machinery, and capital employed in carrying on said factory, not exceeding a certain sum, should be exempted from taxation for a certain time—*Held*, that a store of goods, such as are usually sold in the country, which was owned by said corporation, was not within the exemption, and was liable to taxation, notwithstanding the whole property owned by the corporation, including said store of goods, did not amount to the sum specified.

The corporate name of the company was " The Souhegan Nail, Cotton and Woolen Factory," and a tax assessed against the company was entered in the tax list and warrant, as against " The Souhegan Nail, Cotton and Woolen Corporation." There being no other corporation of that character in the town,—*Held*, that the corporation was substantially described by its corporate name, and the tax legally assessed.

Where the selectmen appoint a collector of taxes pursuant to the statute, the warrant issued to him will be sufficient evidence of his appointment to justify him in acting as such, although a distinct record of the fact of appointment would be more formal.

Where a collector of taxes, after seizing property as a distress, and advertising it for sale, neglected to sell it at the time appointed, but afterwards again advertised it the requisite period, and sold it upon such new advertisement,—*Held*, that neither the neglect to sell at the time appointed, or the subsequent sale, could make him a trespasser *ab initio*.

The day of the seizure of a distress is to be reckoned as one of the four days that it is to be kept by the collector previous to a sale.

TRESPASS, for taking and carrying away sixty yards of cotton cloth.

The defendant pleaded the general issue, and gave notice that he should justify the taking by him as a collector of taxes in the town of Merrimack, for the year 1826, as a distress for taxes assessed upon the plaintiffs for that year.

The cause was tried here at February term, 1832, and a verdict taken for the plaintiffs, subject to the opinion of the court upon the following case.

The corporation was created by an act of the legislature, passed December 4, 1812, and was authorized to carry on, and to be seized and possessed of, such real and personal estate, not exceeding $50,000, as might be necessary and convenient to carry on, the manufacture of nails, and of cotton, and the business necessarily connected therewith, at Merrimack.

And by an act of the legislature, passed the 18th June, 1819, the business of woolen manufacturing was provided for, and the corporate name altered accordingly to "The Souhegan Nail, Cotton and Woolen Factory," and it was enacted, that all buildings, machinery and capital employed in carrying on said nail, cotton and woolen factory, not exceeding $30,000, should be exempted from taxation for the term of ten years from the 18th June, 1819.

In the year 1826, and for some time previous, the corporation manufactured only cotton goods, and had, near their factory, a store of such goods as are usually sold in the country, which is a common thing with such corporations. But their capital employed, including said store of goods, did not exceed said sum of $30,000.

The assessors of the town of Merrimack, for the year 1826, placed the said store of goods in the invoice of taxable property, as $400 stock in trade, and assessed upon it a tax of $4,08 against "The Souhegan Nail, Cotton and Woolen Corporation." They made a regular list of the taxes, and the town of Merrimack having neglected to choose a collector, they delivered the list of taxes, with their

warrant in common form, to the defendant, who took the oath of office as collector of taxes for said town.

The defendant having given fourteen days notice of said taxes, to the agent of the corporation, and the said taxes remaining unpaid, on the 3d October, 1826, by virtue of said warrant, seized the cloth mentioned in the declaration, and duly advertised the same for sale on the 7th of the same October ; but he neglected to attend at the time appointed for the sale, and the cloth was not then sold.

The cloth, when first taken, was left by the defendant with the agent of the corporation, in the said store. On the 9th October, 1826, the defendant again advertised the cloth for sale, on the 13th of the same month, when it was brought forward by the agent and sold.

*C. H. Atherton*, for the plaintiffs, argued, 1. That the act of incorporation contained a valid exemption of the capital stock of the company from taxation. There may be cases where an exemption of existing corporations would be unconstitutional. But when a new corporation is created, the legislature may exempt in the original act—in the contract creating the existence—and here the act of 1819 changed the corporation, and granted new powers. The store of goods was a part of the capital stock, and of course included in the exemption. The presumption is, that manufactured articles were exchanged for goods. If the corporation could not lawfully hold the store of goods as a corporation, it was taxable to them as a company, or as individuals, and not as a corporation. But they are estopped to deny that it was part of the capital stock, and if so it was exempted.

2. The tax for which the distress was taken, was not assessed upon the plaintiffs. By the statute, the property of a manufacturing corporation is to be taxed to the company by its corporate name. If this corporation was intended, there is a fatal misnomer. *Cro. Car.* 574 ; *Angell & Ames*

on Corp. 389; 5 N. H. Rep. 449, *Burnham* vs. *Savings Bank.* The statute of jeofails does not extend to collectors warrants.

3. It does not appear that the defendant was duly appointed collector. It is not enough, in a case of this kind, that he acted as collector. A regular appointment should have been shown by matter of record.

4. The proceedings of the defendant were irregular and unlawful. After the expiration of four days from the seizure on the 3d of October the defendant had no possession of the cloth until the 13th. Advertising property is not a distress. The defendant, therefore, sold immediately after the last seizure.

But if the advertisement on the 9th may be regarded as a re-seizure, then it does not appear to have been kept the term required. The statute requires that a distress should be kept for the *space* of four days. The expression is peculiar. It must be kept four times twenty four hours. And in order to sustain the proceedings in this case, the court must presume that the distress was made at an hour prior to the hour of sale.

If the collector may be considered as having a constructive possession from the 3d until the 13th of October, then he kept the distress too long; and although a neglect to sell would not make him a trespasser, selling after the time will do so.

At common law any irregularity made a collector a trespasser ab initio. 2 *Chitty's Pl.* 284; 15 *Johns.* 401, *Gardner* vs. *Campbell;* 13 *Johns.* 414, *Van Brunt* vs. *Schenck;* 1 *N. H. Rep.* 91, *Blake* vs. *Johnson;* 3 *N. H. Rep.* 69, *Ordway* vs. *Ferrin;* ditto 210, *Barrett* vs. *White, and authorities cited.*

*Edmund Parker,* for the defendant, contended, 1. That the clause of the act of incorporation, which purported to exempt the capital stock from taxation, was unconstitutional

and void.   By the constitution, every member of the community is bound to contribute his share towards the expenses of the government.   *Bill of Rights, Art.* 12.

In 4 *N. H. Rep.* 565, there is an opinion of the court, that it is unconstitutional for the legislature to assess a tax on a particular town.   A similar difficulty occurs from exempting a town, or other corporation, or a person, from taxation.   It destroys the equal proportion in the same manner. If this corporation is exempted, the inhabitants must pay greater taxes.   12 *Mass. Rep.* 252, *Portland Bank* vs. *Apthorp.*

An exemption of all factories from taxation is altogether different from an exemption of one particular factory.   The latter is like the exemption of a single individual.

2. If the provision in the charter was constitutional, this store of goods was not within the exemption.   The capital stock is exempted.   Buying the raw material, and manufacturing, and selling the manufactured article, is within the legitimate powers of the corporation, and the fund used for these purposes is the capital stock.   But buying and selling groceries, to the public generally, has nothing to do with manufacturing.   The corporation had, in fact, no right to carry on such business.   The powers of corporations extend no further than is necessary to effect the intention of their incorporation.   *Angell & Ames on Corp.* 59, 140.

3. The name of the corporation is sufficiently certain. The word "corporation" is used instead of "factory," but "The Souhegan Nail, Cotton and Woolen," with either of these words, sufficiently designates the owner of the property.   1 *Barn. & Ald.* 699, *The Mayor, &c. of Malden* vs. *Miller; Angell & Ames,* 387.

The plaintiffs, by their charter, were made a "corporation," and there is no other corporation existing in the town, of such a character.   No other corporation, therefore, than the plaintiffs, could have been intended.   This must surely be sufficient, in a case where there can be no plea in abatement or amendment.

4. The warrant to the collector is itself evidence of an appointment, and this was recorded.

5. The collector is not a trespasser for not selling on the 7th of October. Nonfeasance cannot make him a trespasser.

A re-seizure may be intended on the 9th, when the property was again advertised.

The distress was kept for the space of four days after that time. The same expression occurs in the statute regulating sales upon execution, and the same rule of computing time is applicable. *N. H. Laws*, 103.

PARKER, J. It is not material to enquire whether the corporation had a right, by their charter, to own and hold the store of goods.

The corporation itself, clearly, cannot be permitted to say, that it was a wrongful act for them to possess this property —was contrary to their charter—and that, therefore, they are not taxable for it, or are taxable as a company, or as individuals.

In *The Gardiner C. and W. F. Company* vs. *The Inhabitants of Gardiner, 5 Green. Rep.* 133, it was held, that the merchandize of a manufacturing corporation employed in trade in a store, was not taxable to the corporation in the town where the store was situated; but this decision cannot be an authority here, on account of a difference in the statutes of the two states.

In 1825 the legislature of this state passed an act, providing that the rateable estate belonging to any manufacturing corporation, or company, in this state, should thereafter be taxed to such corporation or company by its corporate name, and in the town or place wherein said rateable estate was situated.

It is sufficient, that this property was not in the hands of the stockholders, as individuals, and that no individual claimed or exercised ownership over it as such; and it could not be taxed to the plaintiffs as a partnership, otherwise

than as it was taxed, because there was no company, or <span style="float:right; text-align:center;">Souhegan Fac'y<br>*vs.*<br>McConihe.</span> firm, other than the corporation by its corporate name.

The property was in the possession of the corporation, and the selectmen had a right to consider it as lawfully so, and treat it accordingly.

It does not appear how the invoice was taken. The statute requires the clerk, agent, or directors of a manufacturing corporation, to exhibit to the selectmen a true account of the rateable estate of which such corporation shall be possessed on the first of April. And in case they shall neglect, after being duly notified, or refuse when called on, to give a true account, on oath if required, or in case they shall fraudulently conceal some part of their rateable estate, the selectmen may for such neglect or refusal doom, or for such fraudulent concealment assess, the corporation, in the same way and manner they may by law doom or assess an individual, for such neglect or refusal, or for such fraudulent concealment of a part of his rateable estate. *Laws of June session*, 1825, *page* 70.

There is nothing here to show that some proper officer of the corporation did not give in an account of this estate ; or if this was not done, it does not appear that there was not a neglect, upon which it was proper for the selectmen to doom. The case, therefore, is well enough in this respect.

The position that the property was exempted from taxation cannot be supported. " All buildings, machinery, and ' capital employed, or that may hereafter be employed, in ' carrying on said nail, cotton and woolen factory, not ex- ' ceeding thirty thousand dollars, shall be exempted," &c.

But this store of goods was neither within the words or intention of the act. 5 *Green. Rep.* 139.

It was not capital employed in carrying on the nail, cotton and woolen business, but in exercising the trade of a merchant. It was neither the raw material, or the manufactured article, nor a fund for the purchase of the raw material, or to be applied to the hire of laborers, although it

might be sometimes thus employed, by sales to such laborers, in common with other citizens.

If the company embarked a part of their capital in this business, it will make no difference. It would in such case be diverted from the purposes for which the exemption was granted.

Suppose the plaintiffs had employed their whole capital in merchandize. Could it be contended that, thus employed, it was within the exemption? Such a construction would be a fraud upon the public. And if the whole, thus employed, would not be within the exemption, neither can a part be, for the same reason, to wit, that this is not a part of the manufacturing business—not a mode of carrying it on—but the prosecution of another business, for the purpose of a profit.

And while the legislature have uniformly taxed such stock in trade, in the hands of individuals, there is no reason to suppose that they intended to grant an exemption to this corporation, to encourage them to pursue a similar business. The exemption was granted for the capital employed in manufacturing, in order to encourage that.

It is unnecessary, therefore, to consider whether the exemption was constitutional.

The property, then, being liable to assessment, has such assessment been legally made?

It is objected that the assessment is erroneous—that the name of the corporation is "The Souhegan Nail, Cotton and Woolen Factory," and that the assessment is made and warrant issued against "The Souhegan Nail, Cotton and Woolen Corporation."

The property was by statute to be taxed to the corporation by its corporate name. The object of this, however, was not to require that every word, syllable and letter, contained in the corporate title, should be inserted in the tax list, but to provide for a corporate, instead of an individual, taxation.

Prior to 1825, shares in manufacturing corporations, like shares in banks, were taxed to the individual stockholders. That statute changed the rule, and provided that all the taxable property of manufacturing corporations should be assessed to the company.

Suppose, the corporate name being " *The* Souhegan," &c., the tax had been assessed, omitting the article. Would that have vitiated the tax? No one would attempt to maintain such a position.

It has been supposed that there was some analogy between a process of this character, and the ordinary process in instituting a suit by attachment or arrest, in which case, if there is a misnomer, the writ may be abated; and it is argued, that, as the statute of jeofails does not extend to this case, there can be no amendment.

But there is in truth little more than a fancied analogy. All persons and corporations within a town owe a duty to the town. It is their duty to give in an invoice, by a true name, and to pay the taxes assessed. So far as any analogy exists, it is to final process, where the party has neglected to plead abatement, rather than to mesne process. The taking of the invoice is the preparatory process—the making of the taxes the entering of judgment. Opportunity is given for the correction of errors, by application to the selectmen. The warrant to collect is in fact a final process. It is, therefore, more like a case, where one summoned by a wrong name appears, and neglects to plead abatement, and has judgment against him by that name. It is true there was no opportunity to plead abatement, but there was to have mistakes corrected.

By neglecting to avail himself of this opportunity for the correction of errors, however, an individual does not preclude himself from objecting, afterwards, to any substantial defect. The requirements of the law, in all matters of substance, must be strictly pursued, before the property of an individual or corporation is taken away by such process.

But, on the other hand, the selectmen should not be regarded as prosecuting an adversary suit against those upon whom it becomes their duty to assess a tax. If the requisitions of the law have been substantially complied with, mere circumstantial errors and mistakes, in matters of form, should not vitiate the proceedings.

Is this then an error of substance or form?

In ejectment, the demise was laid to be by " The mayor, aldermen," &c. "*of the borough town of Maldon.*" On the trial it turned out, from the charter, that the name of the corporation was " The mayor," &c. of *Malden.* The court held this was no variance, it appearing from the charter, which was in evidence, that Malden was a borough town. 1 *Barn. & Ald.* 699, *Doe* vs. *Miller.*

Although the names of corporations are not mere arbitrary sounds, yet *if* there be enough said to show that there is such an artificial being, and to distinguish it from all others the body politic is well named, though the words and syllables are varied from : and this the rather in grants, which are to have a favorable construction. *Bac. Abr., Corporation, C.* 2.

The case of *The mayor and burgesses of Lynne Regis,* 10 *Co. Rep.* 124, was founded on a bond to the plaintiffs, by that name, which varied from the true name ; and it was resolved that " the name of a corporation, in grants or con-'veyances, need not be *idem syllabis et verbis,* but it is suffi-'cient if it be *idem re et sensu.*" Coke, in that case, says " there will be found a difference between writs and grants, 'and in all cases it is true, *quod apices juris non sunt jura,* 'for if a writ abates, one might of common right have a 'new writ, but he cannot of common right have a new bond 'or a new lease, &c."—" So I conceive it would be reason-'able, *a multo fortiori,* to drive him who would avoid a 'writing, demise, grant, &c., made by a corporation, or to it, 'by reason of any verbal or literal misnomer, to shew that 'there are two corporations in the same city, borough, or

'town, &c., one by the true name, and another by such 'name as is contained in the deed, &c., and to leave the 'deed, &c. good, by or to one of them." *Vide also* 10 *Mass. Rep.* 362.

The plaintiffs were incorporated by the name of "The mayor and burgesses of the borough of Stafford, in the county of Stafford," and sued by the name of "The mayor and burgesses of the borough of Stafford." This is in abatement, and not in bar. Eyre, C. J. said—"Here was a 'corporation of nearly the same name, and I think, there-'fore, on the authorities, that the nonsuit was wrong." 1 *Bos. and Pul.* 40, *The Mayor, &c.* vs. *Bolton.*

When a corporation is sued, if the name of the corpora-tion is mistaken materially and substantially, the corporation cannot be affected by the proceedings. There is in these cases a distinction made between a variance in words and syllables only, and a variance in substance. If a corpora-tion be sued by a name varying only in words and syllables, and not in substance, from the true name, the misnomer must be pleaded in abatement, otherwise it will not be re-garded. But if the name be mistaken in substance, the writ cannot be regarded as against the corporation. 5 *N. H. Rep.* 449, *Burnham* vs. *The Savings Bank.*

The statutes of New-York directed the trustees of school districts, in assessing taxes, to make out a tax list "con-taining the names of all the taxable inhabitants," &c., and a tax assessed to "The widow and heirs of A. B., deceased," for a farm which was owned and actually possessed by such widow and heirs, was held sufficient to justify the collector in executing his warrant. 10 *Wendell's Rep.* 340, *Wheeler* vs. *Anthony.*

As no plea in abatement can be interposed to a warrant for the collection of a tax, it would seem that an objection of misnomer in the assessment of such tax, or rather that the tax was not assessed against the corporation, should be founded upon a substantial variance, and not one of mere

words and syllables. If there is no plea of abatement, there should be no law of abatement.

The reason given for a distinction between leases, bonds, &c., and writs, well applies in such case. If the objection is held fatal, the tax is wholly lost. There is no giving of a better process.

That the corporation, in this case, is substantially described by its corporate name, cannot be doubted. Although the word " factory" is omitted, no one would read it without understanding that it was a manufacturing corporation ; and it is not suggested that there was in the town any other corporation of a like description.

How far the same doctrine can be applied to taxes against individuals, we are not now called upon to decide. It would seem that a tax against John Doe, when the individual intended was John W. Doe, and there was no other person of a similar name in town, which is a case nearly analogous to this, would not present such a substantial misdescription that it must necessarily fail ; although a total mistake and misdescription of the christian or sirname might render it void. 6 *D. & E*. 234, *Cole* vs. *Hindson ;* 2 *Camp*. 270, *Scandover* vs. *Warne ;* 8 *East*, 328, *Shadgett* vs. *Clipson ;* 4 *Wend*. 555 ; 6 *Cowen* 456 ; 7 *Cowen* 332.

It is farther objected, that there is no sufficient evidence of the appointment of the collector. He was appointed by the selectmen, in pursuance of the statute, the town having neglected to elect one. That the appointment should in some way appear of record, is true. But there is no particular form for a record in such case—and the warrant granted to him, which is his commission for collecting the taxes, and which of course must have been recorded in the town records, being under the hands and seal of the selectmen, is a sufficient evidence of an appointment by them, the town having neglected to elect. 2 *N. H. Rep*. 205.

If it did not appear that the town had so neglected, this might not have been proper evidence of an appointment,

as the case might have presupposed other and better, that is, a record of an election.

A distinct record of the appointment would be more formal, and is to be preferred.

Another objection is, that the proceedings of the defendant were unlawful. It is urged, that after four days from the seizure on the third of October, the cloth being in the actual possession of the agent of the corporation, the collector could not have a constructive possession, and that he had, therefore, no possession from that time until the day of sale—and did not keep the distress four days.

But it is apparent, that although in the actual possession of the agent, it was held for the collector, for it is given up to him by the agent when called for. Had the agent, after four days, claimed to hold the cloth for the company, and the collector seized it again on the day of sale, it might have presented a different question.

It is further urged, that after the seizure of the property, and an advertisement of it by the collector, if the property is to be considered in his possession constructively, he did not sell at the expiration of four days, but proceeded to advertise a second time, and sell on a subsequent day, six days after he had any right.

But it is settled that the keeping of the goods beyond the time prescribed by the statute, is mere nonfeasance, which will not make the collector a trespasser. 3 *N. H. Rep.* 69, *Ordway* vs. *Ferrin* ; 15 *Johns.* 402, *Gardner* vs. *Campbell.*

And it is difficult to conceive how the subsequent sale, if the property was duly advertised, being made in pursuance of the command in the warrant, can be such an abuse of his authority as to make him a trespasser *ab initio.*

It is, therefore, unnecessary to consider whether the second advertisement might be regarded as a re-seizure. If it might be, the objection that it did not appear that the distress was kept for the space of four days from that time (the advertisement being on the 9th and the sale on the 13th)

Souhegan Fac'y
*vs.*
McConihe.

must fail, for the reason suggested in the argument of the defendant's counsel. The same expression occurs in the statute relative to sales of personal property on execution; and it has never been supposed that the statute prescribing the manner of sales by collectors intended to introduce any new rule of computing time. The day of the seizure is to be regarded as one, and the distress was of course kept for the space of four days after the second advertisement, before the sale. But this is not material to the decision of this case.

I am of opinion that the verdict should be set aside.

RICHARDSON, C. J. The statute makes it the duty of the collector to keep the distress four days, in order that the owner of the goods may have an opportunity to obtain them again by paying the taxes. And as the goods are to be kept at the expense of the owner, it is made the duty of the collector, in order to prevent unreasonable expense on that account, to sell the goods within forty-eight hours after the expiration of the four days. These provisions in the statute must be strictly pursued. When one man takes and sells the property of another, by virtue of power given by a statute which makes particular provisions for the benefit of him whose property may be taken, there must be no material deviation in the proceedings from the spirit of such provisions. 5 *Mass. R.* 402; 9 *ditto,* 265; 3 *N. H. R.* 69.

In this case, the cloth was seized on the 3d October, 1826, and was sold on the 13th October. No reason is shown why it was not sold within the time limited in the statute. It is, then, clear that the sale cannot be considered a regular sale upon the first seizure.

But the cloth was advertised for sale a second time, on the 9th October; and the questions are—1st. Can this be considered a new seizure? and 2d, if it can, was it a legal seizure? 3d. Can the sale on the 13th be considered as made by virtue of the first seizure, and if so, is the officer to be treated as a trespasser?

A distress for taxes is in its nature an execution. When a statute says money shall be levied by distress, this is an execution. *Cases Tem. W.* 3, 328, *Rex* vs. *Speed* ; 1 *Burrow* 579, *Hutchins* vs. *Chambers.*

In general, the law in relation to seizures and sales by virtue of a collector's warrant is the same as the law in relation to seizures and sales by virtue of executions.

It is well settled, that a mere seizure by a sheriff, or a collector, of sufficient goods to satisfy the claim for which the seizure is made, is not, *ipso facto*, a satisfaction of the claim.

Thus it is not a satisfaction, if the debtor agree with the officer to take back the goods. 2 *N. H. R.* 298, *Churchill* vs. *Warren ;* 1 *B. & A.* 157, *Lear* vs. *Edmunds ;* 8 *Cowen* 192, *Ontario Bank* vs. *Hallett ;* 11 *East* 296, *Gyfford* vs. *Woodgate.*

The goods may be taken from the officer by virtue of some better right in the government or in some individual, and the seizure be thus defeated. 3 *Peters' S. C. R.* 292, *Harris* vs. *Dennie ;* 9 *Pick.* 364, *S. C. ;* 16 *East,* 254, *Thurston* vs. *Mills ;* 1 *Brod. & B.* 370, *Swain* vs. *Marland ;* 1 *East,* 338.

The goods may perish without any fault on the part of the officer. 1 *Salkeld* 248.

So if a collector of taxes, having seized goods sufficient to pay the tax, and advertised them for sale on a particular day, should, by reason of sickness, or other inevitable accident, be unable to attend the sale on the day, or to adjourn it to day when he could attend, and the distress should thus fail altogether, no good reason is perceived why he should not again seize the goods as a distress.

In all these cases the seizure does not operate as a satisfaction.

And in debt upon a judgment, it is no plea simply to allege that goods of value sufficient to satisfy the judgment have been taken by virtue of an execution, without alleging that the judgment is satisfied. 1 *B. & A.* 157, *Lear* vs.

*Edmunds ;* 2 *B. & B.* 662, *Hudd* vs. *Ravenor, and* 2 *B.
& B.* 36, *Lingham* vs. *Warren.*

But when goods of value sufficient to pay a tax have been seized by a collector, it is not necessary in all cases that they should be sold and the proceeds applied in payment, to make the distress operate as a satisfaction of the tax. The seizure may become a satisfaction, by the mere misconduct or negligence of the collector.

It is well settled, that when goods sufficient to satisfy the claim for which they are taken, are seized, the claim is satisfied, even if he who made the seizure waste the goods, or misapply the proceeds of a sale of them. 4 *Mass. R.* 403 ; 12 *Johns.* 208, *Hoyt* vs. *Hudson ;* 8 *Cowen* 192, *Ontario Bank* vs. *Hallett ;* 2 *L. Raymond* 1072.

In an action of trespass for breaking and entering the plaintiff's close and treading down his grass with hogs, the defendant pleaded in bar that the plaintiff distrained a hog damage feasant for the same trespass, and impounded it in the common pound. To this the plaintiff replied, that the hog escaped without his assent. Upon demurrer, the replication was adjudged insufficient, because it was not alleged that the escape was without any default on the part of the plaintiff. 1 *Salkeld* 248, *Vasper* vs. *Eddows ; Buller's N. P.* 84.

If, then, it had appeared that the collector failed to sell the goods at the day in this case, through some unavoidable accident, and without any fault or negligence on his part, it seems he might have again seized the goods, and have legally sold them to pay the taxes.

And under such circumstances, as the goods were in the hands of his agent, there seems to be no good reason why his advertisement of the goods again for sale should not be considered as a new seizure, on the 9th October. It does not seem to be necessary, to constitute a seizure, that he should place his hands upon the goods. 2 *N. H. R.* 318.

But no explanation is given in this case by the collector

why he failed to sell on the day first appointed ; or why, if he could not attend to the sale on that day, he did not adjourn it to a day when he could attend.   For aught that appears, he may have failed to sell through mere wanton neglect.   If a collector can at his pleasure neglect to sell on the first day, and then again legally seize the goods, he may evade altogether the wholesome provision in the statute, which declares that the goods shall be sold within a limited time after the seizure.   It in fact renders that provision in the statute nugatory.

A second seizure in this case cannot then be legally sustained, until it is satisfactorily shown that the first seizure failed without any fault or neglect on the part of the collector.

But I do not see any objection in this case to considering the sale as made by virtue of the seizure on the 3d October. The suit is between the collector and the owners of the goods.   The goods remained in the hands of the person to whom the collector delivered them, from the time of the seizure until the day of the sale.   And it does not appear that the neglect of the collector to sell within the time prescribed by the statute created any expense, or was in any way injurious to the owners of the goods,

The question then is, whether the neglect of the defendant to sell within forty-eight hours after the expiration of four days from the time of the seizure, made him a trespasser ? This question was settled in the case of *Ferrin* vs. *Ordway*, 3 *N. H. R.* 69, where it was decided that a collector does not become a trespasser in such a case.

Upon the other points in the case I have nothing to add to what has been said by my brother Parker.

Green and Upham, justices, concurring, the verdict was set aside, and

*Judgment for the defendant.*