Ainsworth *v.* Dean.

## AINSWORTH *v.* DEAN.

A certificate, that selectmen were "qualified by J. C. Clement," is not evidence that they took the oath of office according to the statute.

Where an appointment of collector of taxes is made by the selectmen, since the passage of the Revised Statutes, the appointment must be in writing, and recorded.

A list of non-resident taxes will be defective, if the name of the original owner, when known, be not inserted therein.

Where lands are lotted, the number of the lot and range must be inserted in the list.

The law provides that the description of the land in the list of taxes, must be such, as the land may be readily known by:" *Held*, that the description of the land as " sixty-eight acres, part of government right," was too indefinite.

The law provides that so much of the owner's estate shall be sold, as will pay the taxes and incidental charges. An entire lot of land was offered for sale, and was sold: *Held*, that the sale was invalid.

A vote of a town to raise money to defray town charges, authorizes the raising of a tax; because the word charges, used in the statute, means the sums which the town is legally liable to pay.

WRIT OF ENTRY, for a tract of land in Unity, being a fifty acre lot in the north range of lots, numbered 300. It appeared, that on the 6th of February, 1832, Luke Smith conveyed this lot and another lot, described as the two west lots of the north range of lot No. 300, formerly owned by Gov. Benning Wentworth, called two fifty acre lots, to D. B. Jones and S. Woodward. On the same day, these grantees mortgaged the same lots to Smith, to secure $350, payable by instalments, the last of which was due in April, 1837. On the 2d of September, 1847, Smith entered for condition broken, and foreclosed his mortgage upon both lots, and the defendant has his title. On the 27th of April, 1833, Jones and Woodward conveyed the lot in dispute to Leonard Harrington, who entered under his deed. He conveyed the premises to Nathan B. Story on the 15th of February, 1843. Story mortgaged the premises to S. Hubbard in March, 1843, and Hubbard's interest was conveyed to the plaintiff in February, 1847. The plaintiff claimed to hold this lot, by virtue of a deed of the lot made to him on the 25th of February, 1845, by John Chase, collector of taxes of the town of Unity for the year 1843.

To support this deed, the plaintiff laid before the jury the usual evidence of the records and proceedings necessary to authorize the sale of the land for a non-resident tax. To certain parts of which the defendant took exception, as follows : —

I. It does not appear that the selectmen who assessed the tax, were properly chosen, or took the oath of office prescribed by law. The record was as follows : " Chose Amos Perkins, F. P. Smith, and John Sleeper, selectmen, qualified by J. C. Clement." It appeared that Clement was moderator of the meeting.

II. The votes of the town in 1843, did not authorize the raising any tax.   The votes were as follow : —

" Voted to raise the sum of $1500 to defray town charges.

" Voted to raise the sum of $1500 to repair highways in summer, and the like sum in winter, if needed."

It was proved that no more than their just proportion of $1500 highway tax, was assessed on any land of non-residents.

III. It does not appear that Chase was appointed and qualified to act as collector. The record of the town-meeting says : — " Chose John Chase, collector." Chase did not give a bond within six days after this election. The selectmen made their warrant to Chase, as collector, dated April 29th, 1843, and delivered it to Chase on the 2d day of May, with the non-resident tax list.   On the 5th of May, Chase took the oath of office as collector, before A. Perkins, justice of the peace, and entered into the proper bond. It appeared that the warrant and list were delivered to the town clerk for record in May, but it did not appear when that or the certificate of the oath of office was recorded. One of the selectmen testified, that when the warrant was made to Chase, they considered him as collector by vote of the town, and they did not appoint him.   In the bond it was recited that he was elected at the annual meeting.

IV. The list of taxes is defective ; because

1st. Neither the name of the owner, nor of the original owner, was inserted, though the latter was known, but the name of Leonard Harrington was inserted as owner, though he had before conveyed to Story.

2d. Neither the lot nor range is inserted, though it appeared that the lands in the town were lotted.

3d. No sufficient description of the land is inserted, the whole being " sixty-eight acres, part of government right."   It ap-

peared that lot No. 300, formerly owned by Governor Benning Wentworth, of which the premises in controversy are part, contained 500 acres. It did not appear that any other part of this lot was taxed, as non-resident.

V. The affidavit of publication of notice of the tax sale in the newspaper is insufficient, because it merely states that it was "published three weeks successively, the first publication being more than eight weeks before the sale," without specifying on what days the paper was published.

VI. It does not appear that the sale was of so much of the owner's estate as would pay the taxes and incidental charges only. A witness testified that he was present at the sale, and that the whole lot was put up for the amount of the taxes and cost, as the cost was estimated by the collector; that the plaintiff made one bid, and there was no other, and it was struck off to him.

Upon this evidence, the Court directed that a verdict should be returned for the plaintiff, subject to the opinion of the Superior Court, and to be set aside and a nonsuit entered if the Court should be of opinion that the collector's sale was not legal.

*Prentiss*, for the plaintiff.

*Snow*, for the defendant.

The defendant in this case contends, that the collector's sale is not legal, because, —

I. It does not appear of record that the selectmen were chosen by ballot and by major vote. They must be thus chosen. Rev. Stat. ch. 34, § 2. The doings of towns are proved by their records. *Adams* v. *Mack et al.* 3 N. H. Rep. 499. A legal choice of selectmen must of course in this case, be shown by the record. But the record shows simply that they were "chosen." For aught that appears, they may have been chosen by Ayes and Noes. This was a point made by counsel in *Cavis* v. *Robertson*, 9 N. H. Rep. 524, but was not decided by the Court.

II. It does not appear from the record that the selectmen

took the oath of office prescribed by law. The record is merely, " qualified by J. C. Clement." This is not sufficient. *Gibson* v. *Bailey et al.* 9 N. H. Rep. 175, 177. If the record showed even that the selectmen were " sworn into office," it would not be sufficient. *Cardigan* v. *Page*, 6 N. H. Rep. 191.

III. The votes of the town to raise money, do not warrant the raising of a tax. Towns are authorized to grant and vote such sums of money as they shall judge necessary for certain specified purposes, " and for all the necessary charges arising within the town." Rev. Stat. ch. 31, § 4. A vote to raise a sum of money for the " expenditures " of a town is illegal. *Adams* v. *Mack et al.* 3 N. H. Rep. 493. No distinction can be made between town " charges " and town " expenditures." If " town charges " may be construed to mean " all the necessary charges arising within the town," the word " necessary " has of course no meaning, and is superfluous.

IV. John Chase was not collector for the town of Unity in 1843.

1. The office of collector was vacant by his neglect to give bond within six days after his election by the town. Rev. Stat. ch. 36, § 4. One of the selectmen testified that they did not appoint him collector, and their warrant delivered to him on the 2d of May, 1843, did not constitute an appointment, and, under the circumstances, was not evidence when recorded, of an appointment. The case of the *Souhegan Factory* v. *McConihe*, 7 N. H. Rep. 309, does not conflict with this position. In that case the selectmen had made a legal appointment before the delivery of the warrant to the collector, for by the statute then in force, (see Laws of 1815, p. 242,) a parol appointment was sufficient ; and the Court only decide that the appointment must in some way appear of record, that there was no particular form for a record in such a case, and that the warrant recorded was record evidence of an appointment.

2. The warrant delivered to Chase on the 2d of May, 1843, did not purport to be an appointment, and cannot be construed to be such within the meaning of the statute, even if it had been so intended by the selectmen. Rev. Stat. ch. 36, § 6.

3. If the warrant delivered to Chase constituted an appointment, the appointment was made by mistake or accident. The appointment of a collector by selectmen is the exercise of an important authority, and cannot be done by mistake or accident.

4. It does not appear from the record when the warrant and certificate of the oath of office were recorded, nor when the latter was delivered to the town clerk. The certificate for aught that appears, may have been delivered to the town clerk and recorded fifteen minutes before the record was produced in court. A collector appointed by the selectmen has no authority until his appointment and the certificate of the oath of office have been recorded in the records of the town. Rev. Stat. ch. 36, § 6. *Phillips* v. *Nelson,* decided in this court for this district, July term, 1850.

5. If the warrant delivered to Chase constituted an appointment, he certainly was not warranted in entering upon the duties of office before he had given bond and been duly sworn, which did not take place until the 5th of May, 1843; and the warrant and list of taxes wrongfully delivered to and received by him on the 2d of May, could not, without a subsequent delivery by the selectmen, be legally in his hands and authorize the collection of taxes.

6. The delivery of the warrant and list of taxes to Chase, before he was appointed collector, had given bond, and taken the oath of office, was an unlawful act, and a legal appointment cannot be the consequence of such unlawful act.

V. The list of taxes is defective.

1. The name of the owner, if known, otherwise the name of the original owner, if known, must be inserted in the list. Rev. Stat. ch. 46, § 1. If known and omitted, the list is insufficient. *Cardigan* v. *Page,* 6 N. H. Rep. 192. The case finds that the name of the original owner was known, but was not inserted in the list.

2. The name of Leonard Harrington was inserted in the list as owner, though he had previously conveyed to one Story. The insertion of the name of a person as owner who was not owner,

would seem to be as exceptionable as the omission of the name of the owner who was known.

3. The number of the lot and range, if lotted, must be inserted in the list. Rev. Stat. ch. 46, § 1. The case finds that the lands in the town of Unity were lotted, but the number of the lot and range was not inserted.

4. If the last position is not correct, there must be inserted in the list the number of the lot and range, or "such description as the land may be readily known by." Rev. Stat. ch. 46, § 1. *Brown* v. *Dinsmoor*, 3 N. H. Rep. 103. The case finds most clearly that no such description, if any, was inserted. Lot No. 300, which was the Governor's right, consisted of 500 acres. Although the number of acres is inserted in the list agreeably to the statute, it is difficult to conceive of any thing more uncertain and indefinite by way of description, than " part of Governor's right." A simple statement of this point would seem to be sufficient.

VI. "So much of the owner's estate" only, as would have paid "the taxes and incidental charges," should have been offered for sale and sold. Rev. Stat. ch. 46, § 8. The case shows that the entire lot in the outset was offered for sale, and one bid having been made, was struck off.

GILCHRIST, C. J. Several of the exceptions taken in this case must be sustained, and it will therefore be unnecessary to consider the others.

1. There is no evidence that the selectmen took the oath of office according to the statute. A certificate that they were " qualified by J. C. Clement" is insufficient. *Gibson* v. *Bailey*, 9 N. H. Rep. 177.

2. By the act in force at the time of the decision of the case of the *Souhegan Factory* v. *McConihe*, 7 N. H. Rep. 309, a parol appointment of a collector, by the selectmen, was sufficient. N. H. Laws, 252, § 8. (Ed. of 1830.) By the Rev. Stat. ch. 99, § 6, such an appointment must be in writing and recorded. The case finds that no appointment was made by the selectmen. This appointment is something distinct from the warrant, which

Ainsworth v. Dean.

is separately mentioned, and it is provided that the appointment must be in writing. Rev. Stat. ch. 109, § 8. There is to be a warrant in all cases accompanying the list of taxes, and an appointment in writing when the choice is made by the selectmen.

3. The list of taxes is defective, because the name of the original owner, though known, was not inserted therein. Rev. Stat. ch. 46, § 1. *Cardigan* v. *Page*, 6 N. H. Rep. 192. It is also defective because neither the number of the lot nor of the range is inserted, although it appeared that the lands were lotted. Rev. Stat. ch. 46, § 1. The land is described as " sixty-eight acres, part of governor's right." This description is altogether too indefinite. The statute provides that the description must be such " as the land may be readily known by," and this description does not answer such a requirement. Rev. Stat. ch. 46, § 1. *Brown* v. *Dinsmoor*, 3 N. H. Rep. 103.

4. It is provided by law that so much of the owner's estate shall be sold as will pay the taxes and incidental charges. Rev. Stat. ch. 46, § 8. No regard appears to have been paid to this provision in the sale, and no reason is given why the law was not complied with, if indeed any reason could be considered as sufficient. The whole lot was advertised and sold for the amount of taxes and costs as estimated by the collector. For these reasons we are of the opinion that the action cannot be maintained. But we are of opinion that the second position stated in the case, which is, that the votes of the town for the year 1843, did not authorize the raising of any tax, is not tenable. These votes were, " to raise the sum of $1500, to defray town charges ;" also, " to raise the sum of $1500, to repair highways in summer and the like sum in winter if needed."

In the case of *Adams* v. *Mack*, 3 N. H. Rep. 497, a distinction is taken by the counsel *arguendo*, between the charges and expenditures of the town, and there is undoubtedly a substantial distinction to be made between the two. The word " charges," as it is used in the statute, means the debts legally due from, or the expenses properly incurred by, a town ; whereas the word " expenditure " merely means the spending of money. Raising money to pay whatever is a charge on the town is a different

Ainsworth *v.* Dean.

thing from raising money to repay whatever the town may have expended, for they may have spent money for illegal and improper purposes. Webster defines the word " charge " to be " cost, expense; as, the charges of the war are to be borne by the nation." He defines the word " expenditure " to be " the act of expending, a laying out, as of money; disbursement, money expended, expense." As the vote here was to raise money to pay town charges, and as we think the word charges means the sums which the town was legally liable to pay, we think this exception cannot be maintained. According to the provision in the case, the verdict must be set aside, and the plaintiff must become

*Nonsuit.*