The opinion of the Court was afterwards delivered by
Parsons, C. J.
Upon the facts agreed in this case, the question of law is, whether, at the time of the seizure of these chattels by the defendant, the plaintiff had or had not a special property in, or right of possession to them, that will enable him to maintain this action.
The seizure by the plaintiff was lawful, and he thereby acquired a special property in the chattels, which still continued, unless that special property was determined by his fault or negligence, in not seasonably advertising them for sale, and m not proceeding to sell them accordingly.
We lay the attachment out of the case, as it is immaterial whethei *313 the chattels had been attached or not, as Dix and Robinson had no lien prior to Rider. In this case each execution may be considered as a fieri facias, the service of which is regulated by the statute of 1783, c. 57. $ 5.
It is very properly admitted by the counsel for the plaintiff, that if his right to sell after the seizure depended on his selling at the expiration of four days, having advertised the time and place of sale forty-eight hours previously, then he has lost the special property he acquired by the seizure. For it cannot be supposed that his special property continued, when he had no authority to turn the chattels into money. And to maintain * the [*402] action, he has argued that the provisions of the statute are merely directory, giving the officer authority to sell on the expiration of the time there limited, having first advertised the sale as there directed. But that the sheriff, notwithstanding this direction, may lawfully sell the goods seized at any time after the seizure, and before the return of his execution; as the authority given by the common law, to the sheriff in executing a fieri facias, is not repealed by this statute.
At common law, the sheriff, after seizing the goods on fieri facias, was obliged to sell them; but he might use his own discretion as to the time or the manner of the sale, not being obliged to sell at auction. And if either party desired a sale at auction, he must bear the expense of it, which formed no part of the sheriff’s account. And the plaintiff was obliged to be at the whole expense of the levy, unless the judgment was on a penalty, when he had a right to recover his whole debt, exclusive of the expenses of the execution (3).
By our statutes, the rights of the parties and the duty of the sheriff are very different in executing a fieri facias. The debtor must be at the expense of keeping the goods, and of the sale, which the sheriff is obliged to make by public auction. And if the sheriff might keep the goods for any time at his discretion, the expense of keeping them must be borne by the debtor, which, especially in the case of live cattle, might exceed their value; and thus the execution might remain wholly unsatisfied.
From these considerations, we are satisfied that the common law is, in this respect, by necessary implication repealed; and that the rights of the parties and the duty of the officer must depend on the provisions of our own statutes. By these the officer, having seized goods on a fieri facias, is obliged to keep them four days, that the *314 debtor may, if he see cause, redeem them. During this [ * 403 ] time the goods must be considered as in the nature *of a distress; and if, before the expiration of that time, the debtor satisfy or tender satisfaction of the execution, and the charge of keeping the distress, the officer cannot proceed to sell. That the debtor may not be unnecessarily burdened by the delay of the sale, at the expiration of the four days the goods are to be sold. They nust be sold at public auction at the expense of the debtor, and it the time and place of which public notice has been given. Phis notice must be given forty-eight hours before the sale; and it must be posted up forty-eight hours before the expiration of the four days. It is then a necessary consequence that the goods must be sold at auction, after they have been kept by the officer four days and no longer.
That this is the true construction, is apparent from the subsequent statutes of 1785, c. 70., and 1791, c. 22., relating to the sale of distresses by collectors of taxes. By the second section of the first of these statutes, the collector might keep the distress four days, and if not redeemed, it is enacted that it shall be sold at public auction, on public notice forty-eight hours before the sale, and after the four days. This delay of the sale for two days after the expiration of the four days, being found inconvenient, the second section of the statute of 1791 enacts that forty-eight hours’ notice of the sale shall be given within the four days, after which the distress may be sold. Under these statutes alone can a collector of taxes sell a distress taken by him, as he derives no authority to sell from the common law.
We are therefore satisfied that the plaintiff, although he acquired a special property by the seizure, yet by neglecting to pursue the directions of the statute, he lost that special property, as to any other creditor. Dix and 'Robinson might therefore lawfully cause the machines to be seized and sold on their execution.
It is agreed in the case, that the defendant knew of the [ * 404 ] prior seizure by the plaintiff. But this knowledge * we do not think material, or any evidence of fraud. For it would be unreasonable for the plaintiff to insist, that either Dix, or Robinson, or the defendant, should presume that the plaintiff had neglected his duty, when a more natural presumption would be, as the machines were not advertised for sale within the four days after the seizure, nor for several days after, that the debtor had redeemed them by satisfying the execution.
The obligation of the officer to sell at the expiration of four days after seizure was considered in a late case in Suffolk, of Lane & al. *315 vs. Jackson (4), when it was the opinion of the whole Court that he was obliged to sell at that time.
It will be observed that the case before us is between two creditors, and does not involve any question between the officer and the debtor. As to the debtor, if the officer advertise and sell after the fourth day, and with the proceeds satisfy the execution, he may be answerable to the debtor for the damages, if any, which he may have suffered from the increased expense of keeping the goods, and from their diminution in value by the delay of the sale; but the satisfaction of the execution shall avail the officer in mitigation of damages. Or if the debtor retake the goods, the officer may again seize them, and proceed to advertise and sell them under this new seizure, being in this case responsible only for the damages by the original seizure, and not for the value of the goods.
The rights of creditors rest on different principles. A creditor may cause the goods of his debtor to be seized, when not in the custody of another having a special interest in them. The plain tiff’s special property is founded on his seizure under the statute; but when he does not pursue the statute, his rights under it cease. He has then no longer the special property as * to any other creditor, who may lawfully cause the goods to be [ * 405 ] seized as his debtor’s, and sold to satisfy his execution.
According to the agreement of the parties, the plaintiff must be called.

Plaintiff nonsuit.

 Impey’s Sheriff, 189. — 2 D. & E. 184. Woodgate vs. Knatchbull.

 Ante, page 157.