## JOEL PIERCE *versus* ABEL BENJAMIN.

Where at a sale of goods for the non-payment of taxes, the collector of taxes became himself the purchaser, it was *held*, that such sale was voidable, at the election of the owner of the goods.

*It seems*, that the owner in such case, in order to maintain trover for the goods, must elect to annul the sale, before the commencement of the action.

If a distress for non-payment of taxes be sold by the collector after the expiration of the time limited by *St.* 1785, *c.* 70, § 2, and *St.* 1791, *c.* 22, § 2, for making such sale, the delay renders the collector a trespasser *ab initio;* and trover will lie against him, in favor of the owner of the goods sold, although no demand thereof be made before the commencement of the action, the tortious taking of personal property being a conversion.

In such an action it appeared, that the collector applied the proceeds of the sale, in part-payment of the tax, and that the owner subsequently paid him the residue of and required a receipt for the whole amount of the tax, in order that he might settle with his landlord. *Held,* that this was not a waiver of the right to bring the action.

In such action it was *held*, that the measure of damages was the value of the goods, deducting the amount applied by the collector to the payment of the tax.

TROVER for a sleigh. The defendant pleaded the general issue.

At the trial, before *Wilde* J., it was proved by the plaintiff, that he demanded the sleigh of the defendant, on July 26, 1831, which was subsequent to the date of the writ, and while it was in the officer's hands for service ; but that the defendant refused to deliver the sleigh.

The defendant proved, that in 1830, the plaintiff was an inhabitant of Montague ; that he was assessed by the assessors of that town, for town, county and state taxes, in the sum of $ 7·52 ; that the defendant was a collector of taxes in that town ; that about June 4, 1830, the tax lists, with warrants, were committed to the defendant ; that about the 1st of November, 1830, the plaintiff removed from Montague to Sutton, without having paid the tax assessed upon him ; that the defendant thereupon seized the sleigh, advertised it a week or longer, as for sale by auction, and purchased it at the auction for the sum of $ 5·00, he being the highest bidder ; that the auction was held at a private house, on a town road, about one hundred rods distant from any public, travelled way, and three persons only were present ; that the defendant, after deducting from the proceeds the expenses of the sale, amounting to 74 cents, applied the balance, amounting to the sum of

$4·26, in part-payment of the tax ; that in June. 1831, the plaintiff came to Montague, paid the residue of the tax, and required the defendant to give him a receipt for the whole amount of the tax, in order that the plaintiff might settle with his landlord ; and that the defendant accordingly gave such a receipt.

Upon this evidence it was objected by the plaintiff, that the sale was illegal ; and it was so ruled by the judge. The defendant contended, that the payment of the residue of the tax and taking a receipt for the whole amount of the tax, was a waiver of all objections to the legality of the defendant's proceedings in the sale ; but the judge ruled otherwise.

It was then insisted, on the part of the defendant, that the application of the sum of $4·26, in part-payment of the tax, by the defendant, ought to be taken into consideration by the jury in the assessment of damages ; but that question was reserved for the consideration of the whole Court, and the cause was committed to the jury, for the purpose of determining the value of the sleigh. The jury returned a verdict for the plaintiff, and assessed damages in the sum of $22·04.

The verdict was to be amended, or set aside and a new trial granted, as the whole Court should determine upon these facts.

The case was argued in writing.

*Newton* and *Smith* for the defendant. This action is not maintainable, because there was no proof of a conversion before the commencement of the action, the demand and refusal being subsequent to the date of the writ. *Storm* v. *Livingston,* 6 Johns. R. 44 ; *Ford* v. *Phillips,* 1 Pick. 202 ; *Badger* v. *Phinney,* 15 Mass. R. 359 ; *Cheetham* v. *Lewis,* 3 Johns. R. 42. The sale was not a conversion ; it was, at the most, voidable, not void. *Jennison* v. *Hapgood,* 7 Pick. 8 ; *Jackson* v. *Walsh,* 14 Johns. R. 407. It could not have relation back, and render the original taking tortious.

2. The plaintiff has misconceived his action ; he should have brought a special action on the case. *Livermore* v. *Bagley,* 3 Mass. R. 487. It is a well established principle of law, that no one can maintain trover, unless at the time when the action was commenced, he had either the general or a spe-

cial property in the chattels for the conversion of which the action is brought. *Waterman* v. *Robinson*, 5 Mass. R. 303; *Ludden* v. *Leavitt*, 9 Mass. R. 104; *Warren* v. *Leland*, 9 Mass. R. 265; *Commonwealth* v. *Morse*, 14 Mass. R. 217 The plaintiff had neither. The defendant took the sleigh by virtue of legal process; and until the sale, the special property was in the defendant, and the general property in the plaintiff. But when the sale took place, the general property of the plaintiff was divested. *Jennison* v. *Hapgood*, 7 P ck. 8 *Jackson* v. *Walsh*, 14 Johns. R. 407. It might be, suppos·ing the rule in equity, forbidding a trustee to purchase the trust estate, to be applicable, that, after the sale, the plaintiff, as cestui que trust, had some equitable interest in the property; but he had no legal interest till a court of equity should have decreed the sale to be void. The bringing of this action is an affirmance of the sale. *Sheldon* v. *Sheldon*, 13 Johns. R. 220.

But the sale was not even voidable. The rule in equity is not applicable to cases like the present. *Sheldon* v. *Sheldon*, 13 Johns. R. 220. The defendant substantially pursued the course pointed out by *St.* 1785, c. 70, § 2, and *St.* 1791, c. 22, § 2. If he kept the sleigh longer than the time prescribed by those statutes, the plaintiff would have no cause to complain, even if the creditors of the plaintiff might impeach the sale on that ground; for the plaintiff had a better opportunity to pay the tax, and prevent the sale. *Haynes* v. *Wallis*, 6 Pick. 462.

The plaintiff, by paying the residue of the tax in June, 1831, and taking a receipt in full from the defendant, has waived his right to bring an action in order to avoid the sale.

If the plaintiff is entitled to recover, it is clear that the sum of $ 4·26, the proceeds of the sale, should be deducted from the amount of the verdict. *Sheldon* v. *Sheldon*, 13 Johns. R. 220; *Prescott* v. *Wright*, 6 Mass. R. 20; *Sandford* v. *Nichols*, 13 Mass. R. 286; *Caldwell* v. *Eaton*, 5 Mass. R. 404.

*Merrick* and *Sibley*, for the plaintiff. The gross delay of the defendant in making the sale, and his proceedings at the sale, rendered him a trespasser *ab initio*. *Purrington* v. *Loring*, 7 Mass. R. 388; *Nelson* v. *Merriam*, 4 Pick. 249. The

original taking of the goods, being therefore tortious, was a <span>Pierce<br>v.<br>Benjamin.</span> conversion of them. Where trespass will lie for a wrongful taking, trover will lie also. 1 Chitty on Pl. 153 ; *Farrington v. Payne*, 15 Johns. R. 431 ; *Prescott v. Wright*, 6 Mass. R. 20 ; *Wallis v. Truesdell*, 6 Pick. 455 ; 2 Selwyn's N P. 1071.

The jury found, as damages, the value of the property at the time of the conversion. We contend, that this is the legal measure of damages, and that nothing like a set-off is to be allowed in this action. *Kennedy v. Whitwell*, 4 Pick. 466.

MORTON J. delivered the opinion of the Court. The defendant, who was collector of taxes in the town of Montague, justifies the taking of the goods in question under a warrant from the assessors of that town and a seizure and sale of the same for the payment of the plaintiff's taxes.

*Oct. 7th.*

It appears, from the reported facts in the case, that the defendant was the highest bidder and purchaser at his own auction. This conduct of the defendant was clearly a violation of his official duty. Such a practice must, if it did not in the present instance, lead to fraud in the publication of notices, and the selection of places of sale. The respective duties of buyer and seller are incompatible with each other, and no person, in whatever capacity he may undertake to act, can rightfully sustain both characters. But a sale by an officer or other trustee to himself, is not absolutely void. The cestui que trust has an option to affirm or avoid it, as he may judge most advantageous to himself. As the plaintiff had made no election to annul the sale by a demand of the property, or otherwise, before the commencement of the action, it may well be doubted whether, upon this ground, he could recover.

But it further appears, that more than six days elapsed after the seizure of the distress, and before the sale. This, in our opinion, is fatal to the defendant's justification.

The *St.* 1785, *c.* 70, § 2, regulates the proceedings of collectors and constables on warrants for the collection of taxes. These proceedings are modified, in a way not affecting the present case, by the *St.* 1791, *c.* 22, § 2. The former statute requires the collector or constable distraining for non-payment of taxes, to keep the distress four days, and if the taxes

be not then paid, to advertise forty-eight hours, and *then*, viz at the end of six days, to sell at public auction. The latter statute authorizes the *forty-eight hours'* notice to be given *within*, and the sale to be made at the expiration of the *four days*. It is immaterial to the present inquiry, whether the latter statute is imperative or only gives the officer a discretion to advertise within or at the end of the four days, as he may judge expedient. *Lane* v. *Jackson*, 5 Mass. R. 157 ; *Caldwell* v. *Eaton*, 5 Mass. R. 399. The officer did not offer the distress for sale within six days and therefore cannot protect himself under either of these statutes. Having no lega. justification for the forcible seizure of the plaintiff's property, he stands in the same relation to him as if he had originally taken it without any authority ; and must be deemed a trespasser *ab initio*.

It is important to the rights of property, that positive regulations authorizing the seizure and sale of chattels without the consent of their owner, should be lawfully and strictly complied with. The defendant has failed to do this. Although the original purpose of the taking was proper and the taking itself *rightful*, yet when there was a failure to make a lawful application, the whole became unjustifiable from the beginning. Having used the goods unlawfully, or applied them to an improper purpose, the officer cannot be permitted to show that they were taken for a purpose to which they were not applied, or upon authority on which they were not subsequently holden. The defendant not being allowed to show that the original seizure was made by any lawful authority, and it being without the consent of the owner, it must of course be *wrongful*. *Purrington* v. *Loring*, 7 Mass. R. 388 ; *Nelson* v. *Merriam*, 4 Pick. 249. The *tortious* taking of personal property is a *conversion* of it ; and therefore trover will lie, without demand and refusal. And it may be laid down as a general proposition, that where trespass *de bonis asportatis* lies, *trover* will also lie. See the authorities cited by the plaintiff's counsel on this point.

It cannot be pretended, that the payment of the balance of the taxes and the taking a receipt for the whole, by the plaintiff, was any acquiescence in the illegal proceedings of the

defendant or any waiver of the right of action. The taxes he was bound to pay in full, and on failure was liable to another distress, or to a personal arrest and imprisonment. The purpose for which the receipt was required, is a sufficient explanation of that act, if indeed any were necessary.

The general rule of damages in actions of trover is, unquestionably, the value of the property taken, at the time of its conversion. But there are exceptions and qualifications of this rule, as plain and well established as the rule itself. Whereever the property is returned, and received by the plaintiff, the rule does not apply. And when the property itself has been sold and the proceeds applied to the payment of the plaintiff's debt, or otherwise to his use, the reason of the rule ceases and justice forbids its application. In all such cases the facts may be shown in mitigation of damages. These principles are supported by many adjudications, and are founded in equity and practical convenience. *Wheelock* v. *Wheelwright*, 5 Mass. R. 104; *Caldwell* v. *Eaton*, 5 Mass. R. 399; *Prescott* v. *Wright*, 6 Mass. R. 20; *Squire* v. *Hollenbeck*, 9 Pick. 551; *Sheldon* v. *Sheldon*, 13 Johns. R. 220.

The rule which for convenience was adopted on the trial of this case is not the correct one. The verdict, according to the arrangement entered into by the parties, must be amended by deducting the amount applied towards the payment of the plaintiff's taxes, and judgment must be rendered on it for the balance.