SAM R. LEVY FABRICS, INC., Respondent, *v.* SHAPIRO BROS. FACTORS CORP., Appellant.

First Department, May 3, 1940.

Gabriel Kaslow of counsel [*Theodore Tannenwald, Jr.*, with him on the brief; *Weil, Gotshal & Manges*, attorneys], for the appellant.

Milton Dombroff of counsel [*Benjamin Diamond*, attorney], for the respondent.

CALLAHAN, J. Plaintiff corporation has recovered a judgment from defendant, on the ground that defendant aided in the conversion of $700 collected by defendant as plaintiff's factor.

The evidence discloses that defendant issued a check to plaintiff's order for said $700, and at the request of plaintiff's president, Samuel R. Levy, guaranteed plaintiff's corporate indorsement on the check by Levy, as president, in order to enable Levy to cash the check. There was evidence that all prior checks had been stamped by the defendant on the reverse side thereof, so as to require plaintiff to deposit them in plaintiff's bank account. There was also proof that plaintiff was not engaged actively in business at the time the transaction concerning the $700 check took place.

Plaintiff introduced evidence to show that its president had no authority to indorse checks without counter-signature by another officer. Plaintiff claims that defendant knew of the lack of authority of plaintiff's president to indorse the check, and that the defendant is liable for conversion in aiding Levy in obtaining the proceeds of the check. [1]

Defendant, on the other hand, contended that it had indorsed the check in the manner above mentioned upon the statement by Levy that the plaintiff needed cash, and that it had no knowledge that the cash was to be used for other than legitimate corporate purposes. Defendant called Levy as its witness to show that he had used the proceeds of the check to pay a lawful obligation of the plaintiff to him for back salary. Although Trial Term received some evidence relating to the validity of Levy's claim, it rejected other testimony which would have been material on that issue.

Apparently the decision of the Trial Term was that, even though the proceeds of the checks were actually used to pay a lawful debt of the plaintiff to Levy, the plaintiff was, nevertheless, entitled to

recover for conversion. It, accordingly, held defendant liable on the authority of *Wagner Trading Company* v. *Battery Park National Bank* (228 N. Y. 37).

In the *Wagner* case (*supra*) the corporate officer indorsed to himself checks made payable to his corporation. Defendant bank collected the proceeds and paid the money out upon the officer's checks for his own personal use. Therefore, an actual misappropriation of corporate funds was established, as was defendant's exercise of unlawful dominion.

The mere fact that the check here involved bore the personal indorsement of Levy did not show an appropriation of the proceeds to his own use. (*Lasker, Inc.*, v. *Mutual Bank of Roseville*, 201 App. Div. 333; affd., 234 N. Y. 550.)

An essential element to enable a principal to recover damages for conversion by a general agent is that there must be knowledge or notice of a transfer by the agent whereby his principal is deprived of its property. (*Wen Kroy Realty Co., Inc.*, v. *Public National Bank & T. Co.*, 260 N. Y. 84, 90.) The nature of the transaction must be such as to warn defendant that the proceeds of the check are being diverted from the usual business channels. (*Wagner Trading Company* v. *Battery Park National Bank, supra.*)

We think that if the proceeds of the check were used by plaintiff's president to pay a valid corporate debt, plaintiff may not recover, especially under the circumstances here involved, where plaintiff conceded that all claims of creditors, other than Levy, had been liquidated. Undoubtedly, Levy as president had apparent authority to accept cash in payment of plaintiff's bills. He would have like authority to pay corporate debts. There was no proof offered by plaintiff of any lack of actual authority upon the part of its president to do either of these things. It merely offered proof to show that the president had no authority to indorse the corporate name on checks.

Merely procuring the cash on the check, even if it involved a breach of the agent's authority to indorse, would not be conversion, if the cash was actually used for lawful corporate purposes. An action for breach of authority to indorse would not lie, unless damage followed. Parties who are jointly and severally liable to the owner for damages arising out of an unlawful taking, cannot by any arrangement between themselves prejudice the rights of the injured party in the prosecution of the trespass. (*Dyett* v. *Hyman*, 129 N. Y. 351.) However, unlawful exercise of dominion must be established to constitute conversion.

If the cash procured was deposited in plaintiff's bank account, it would be clear that plaintiff had no cause of action. It, there-

fore, follows that if there was conversion in the present case it must be because of diversion of corporate funds to other than corporate purposes. All material proof on that issue should have been received.

Under the circumstances, we need not pass on the question as to whether, in the event of a conversion, defendant might show in mitigation of damages that the property converted was restored to plaintiff, when it was used to pay a valid obligation of plaintiff. That might depend on whether the application was at the instigation of the wrongdoer. (*Ball* v. *Liney*, 48 N. Y. 6.)

*Roberts* v. *S. S. D. Company* (123 N. Y. 57, 67) indicates a holding that if the owner had the benefit of the property converted in such a way as to operate in law as a restoration thereof, it would be unjust for him to recover the value of the property from another. The *Roberts* case (*supra*) cited with approval the leading case of *Pierce* v. *Benjamin* (31 Mass. 356), where the court said: " The general rule of damages in an action of trover is, unquestionably, the value of the property taken, at the time of its conversion. But there are exceptions and qualifications of this rule, as plain and well established as the rule itself. Wherever the property is returned, and received by the plaintiff, the rule does not apply. And when the property itself has been sold and the proceeds applied to the payment of the plaintiff's debt, or otherwise to his use, the reason of the rule ceases and justice forbids its application. In all such cases the facts may be shown in mitigation of damages."

*Schramm* v. *Metropolitan Casualty Insurance Company* (224 App. Div. 573) holds nothing contrary to our present views. That was an action by a factor against an insurance company which had insured plaintiffs against loss through payments on checks bearing forged indorsements. Plaintiffs had been held liable to their customer Cafferky & Co., a corporation, for moneys obtained by the president of Cafferky & Co. on checks drawn to the order of Cafferky & Co., and cashed by Schramm, the factor, on unauthorized or forged indorsements. In the suit brought by Cafferky against Schramm on such checks, no claim was made that the president had used the proceeds for corporate purposes. (*See Cafferky & Co., Inc.*, v. *Schramm*, 220 App. Div. 827.)

In the present case the validity of Levy's use of the money was material on the issue of conversion.

The judgment should be reversed, and a new trial ordered, with costs to appellant to abide the event.

MARTIN, P. J., GLENNON, UNTERMYER and COHN, JJ., concur.

Judgment unanimously reversed and a new trial ordered, with costs to the appellant to abide the event.