20-118; 20-850
*Plymouth Venture Partners, II, L.P. v. GTR Source, LLC; Capital Merchant Services, LLC*

# United States Court of Appeals
# For the Second Circuit

August Term 2020

Argued:  February 4, 2021
Decided: February 23, 2021

Nos. 20-118; 20-850

PLYMOUTH VENTURE PARTNERS, II, L.P., PLYMOUTH
MANAGEMENT COMPANY IN THEIR CAPACITIES AS
RECEIVERS FOR FUTURENET GROUP, INC.,

*Plaintiffs-Appellants*,

*v.*

GTR SOURCE, LLC, STEPHEN W. BIEGEL, IN HIS CAPACITY
AS NEW YORK CITY MARSHAL, BADGE NO. 27,

*Defendants-Appellees.**

Appeal from the United States District Court
for the Southern District of New York
No. 19-cv-1471, John G. Koeltl, *Judge*.

---

* The Clerk of Court is respectfully directed to amend the caption as set forth above.

PLYMOUTH VENTURE PARTNERS, II, L.P., PLYMOUTH
MANAGEMENT COMPANY IN THEIR CAPACITIES AS
RECEIVERS FOR FUTURENET GROUP, INC.,

*Plaintiffs-Appellants,*

*v.*

CAPITAL MERCHANT SERVICES, LLC,

*Defendant-Appellee.*

———————————————————

Appeal from the United States District Court
for the Southern District of New York
No. 19-cv-904, Katherine Polk Failla, *Judge.*

———————————————————

Before:    WALKER, SACK, and SULLIVAN, *Circuit Judges.*

These cases present an unresolved question of New York law:  whether a judgment debtor suffers cognizable tort damages when a judgment creditor has a marshal or sheriff seize the judgment debtor's property pursuant to a valid money judgment, but the levy by service of execution does not comport with the service requirements of Article 52 of the CPLR.  Because we conclude that this issue implicates a host of important state interests, we reserve decision and certify the question to the New York Court of Appeals.

REVERSED IN PART, DECISION RESERVED, AND QUESTION CERTIFIED.

SHANE R. HESKIN, White and Williams LLP, New York, NY, *for Plaintiffs-Appellants Plymouth Venture Partners, II, L.P. and Plymouth Management Company, in their capacities as receivers for FutureNet Group, Inc.*

2

RYAN K. CUMMINGS (James Zawodzinski, Jr., *on the brief*), Hodgson Russ LLP, Buffalo, NY, *for Defendant-Appellee GTR Source, LLC.*

ANDREW P. SCHRIEVER (Troy D. Lipp, *on the brief*), Cuddy & Feder LLP, White Plains, NY, *for Defendant-Appellee Stephen W. Biegel, in his capacity as New York City Marshal, Badge No. 27.*

CHRISTOPHER R. MURRAY, Stein Adler Dabah & Zelkowitz, LLP, New York, NY, *for Defendant-Appellee Capital Merchant Services, LLC.*

RICHARD J. SULLIVAN, *Circuit Judge*:

These cases present an unresolved question of New York law: whether a judgment debtor suffers cognizable tort damages when a judgment creditor has a marshal or sheriff seize the judgment debtor's property pursuant to a valid money judgment, but the levy by service of execution does not comport with the service requirements of Article 52 of the CPLR. Because we conclude that this issue implicates a host of important state interests, we reserve decision and certify the question to the New York Court of Appeals.

## I. Background

### A. Facts

FutureNet Group, Inc. is a Michigan corporation that provides infrastructure services to governments and commercial customers. GTR Source,

3

LLC and Credit Merchant Services, LLC ("CMS") are both merchant cash advance businesses, which offer companies cash today in exchange for a portion of those companies' future accounts receivable.

In November 2017, GTR Source entered into such an agreement with FutureNet whereby GTR Source advanced FutureNet $200,000 in exchange for approximately $291,000 in future accounts receivable. The contract explained that FutureNet's receivables were to be direct deposited into the company's bank account with Comerica Bank, from where GTR Source would be permitted to debit daily payments of $3,999.00. Around the same time, FutureNet entered into a similar agreement with CMS. The only difference was the magnitude of the deal: CMS advanced FutureNet $550,000 in exchange for a little over $780,000 in accounts receivable. And like GTR Source, CMS received payment in daily debits from FutureNet's Comerica bank account.

In February 2018, FutureNet was unable to meet its daily payment obligations, causing both GTR Source and CMS to declare defaults and file affidavits of confession of judgment pursuant to CPLR 3218 in New York state court. Later that month, both creditors received a state court judgment. Thereafter, GTR Source and CMS served restraining notices on Comerica,

directing the Detroit, Michigan branch at which FutureNet held its account to refrain from transferring any of FutureNet's funds.[1] Even though Comerica is a Texas-based entity with no banking branches in New York, the notices indicated that Comerica was subject to jurisdiction in New York and warned that failure to comply could result in legal action against Comerica.

A week later, GTR Source issued an "execution with notice to garnishee" to the New York City Marshal, Stephen Biegel (the "Marshal" and, together with GTR Source and CMS, "Defendants"), naming Comerica as FutureNet's garnishee.[2] *See GTR Source* App'x at 55–56. GTR Source directed the Marshal to serve that execution on Comerica through Corporate Creations Network, Inc., a Rockland County-based entity and Comerica's designated agent in New York. Upon receipt of the execution, the Marshal levied on FutureNet's property by serving the execution on Corporate Creations by certified mail.

---

[1] GTR Source served the notice directly on the bank's Detroit branch, while CMS served the notice on Corporate Creations Network, Inc., Comerica's designated New York agent, which is based in Rockland County, New York.

[2] "A 'garnishee' is a person who owes a debt to a judgment debtor, or a person other than the judgment debtor who has property in his possession or custody in which [the] judgment debtor has an interest." CPLR 105(i). A judgment creditor may seize such property of the judgment debtor by having a sheriff or marshal serve a copy of the execution on the garnishee, which is a process known as "[l]evy by service of execution." *See* CPLR 5230, 5232(a).

On March 14, 2018, the Marshal's office delivered an amended execution to Comerica's Detroit branch via fax. The fax cover sheet indicated that the execution was sent by someone named "Alona," not the Marshal. A week later, Comerica issued a bank check to the Marshal for a little over $127,000, which the Marshal then distributed to GTR Source (after deducting his 5% poundage fee).[3] With that money in hand, GTR Source filed a satisfaction of judgment in the New York state court action.

The following month, CMS pursued a similar collections approach. On April 17, 2018, CMS issued an "execution with notice to garnishee" to the Rockland County sheriff, directing him to levy upon FutureNet's Comerica bank account by serving the execution on Corporate Creations. *See CMS* App'x at 37–39. Once the sheriff served the execution as directed, Comerica turned over a bank check for around $322,000 to the sheriff, which the sheriff then remitted to CMS. Despite this recovery, more than half of CMS's money judgment against FutureNet remains unsatisfied.

---

[3] When a New York City marshal collects money by virtue of an execution, the marshal is ordinarily permitted to take a 5% fee, known as a "poundage fee," as payment for his services. *See Solow Mgmt. Corp. v. Tanger*, 10 N.Y.3d 326, 330 & n.3 (2008) (citing CPLR 8012(b)(1) and N.Y.C. Civ. Ct. Act § 1609(1)(a)). In this case, that fee amounted to a little over $6,000.

**B.    Procedural History**

On February 28, 2018, before GTR Source had seized FutureNet's funds, FutureNet moved in state court to vacate the judgment held by GTR Source due to alleged procedural and jurisdictional defects in the affidavit of confession of judgment.  Two weeks later, the state court denied FutureNet's application, holding that FutureNet would need to pursue its requested relief in a separate plenary action.  *See generally GTR Source, LLC v. FutureNet Grp., Inc.*, 98 N.Y.S.3d 500 (Table) (Sup. Ct. Mar. 13, 2018).

After GTR Source and CMS seized funds from FutureNet's bank account, FutureNet's secured creditors commenced a Michigan state court action, seeking to appoint a receiver to oversee FutureNet's assets.  Basil Simon was appointed as receiver over certain intangibles and, on August 24, 2018, acting in his capacity as receiver, he commenced another New York state court action seeking to vacate the GTR Source judgment.  Three months later, the state court denied Simon's motion on jurisdictional and procedural grounds.  *See generally GTR Source, LLC v. FutureNet Grp., Inc.*, 89 N.Y.S.3d 528 (Sup. Ct. 2018).

On February 25, 2019, Simon commenced an action against GTR Source and the Marshal in the Southern District of New York.  Unlike the prior cases, this

action did not seek to invalidate GTR Source's judgment. Rather, it sought to hold GTR Source and the Marshal liable for tort damages that they allegedly caused as a result of an improper execution and levy. In short, Simon took the position that the execution and subsequent levy by service were improper because the Marshal served the execution on Corporate Creations, which is based in Rockland County, and the Marshal's jurisdiction is limited to New York City. *See* N.Y.C. Civ. Ct. Act § 1609(1)(a) (explaining that "[t]he authority of a marshal extends throughout the city of New York"); *see also GTR Source* App'x at 147. Simon argued that because the execution issued by GTR Source directed the Marshal to act outside of his jurisdiction, and because the Marshal did, in fact, act outside his jurisdiction, the execution and levy were void from inception. According to Simon, this meant that GTR Source and the Marshal took possession of FutureNet's property without authority, which rendered both defendants liable under state tort law for wrongful execution, conversion, and trespass to chattels.[4] On each claim against each defendant, Simon asserted damages of just over $127,000 – the total amount collected pursuant to the allegedly unlawful levy.

---

[4] Simon also argued that the Marshal was required to personally serve the execution by hand and was not permitted to fax the amended execution to Detroit or to have some other member of his office serve the execution on his behalf.

8

On December 26, 2019, the district court (Koeltl, *J.*) entered summary judgment in favor of both GTR Source and the Marshal on all of Simon's claims. *See generally Simon v. GTR Source, LLC*, No. 19-cv-1471 (JGK), 2019 WL 7283279 (S.D.N.Y. Dec. 26, 2019). The district court concluded that, regardless of whether the execution and levy were valid, FutureNet had suffered no damages. Specifically, the district court found that "[t]he debt owed by FutureNet to GTR [Source], which [Simon] does not dispute is a valid debt, has now been satisfied as a result of the Marshal's execution and a satisfaction of judgment has been entered," meaning that FutureNet was not harmed. *Id.* at *4.

Separately, on January 25, 2019, Simon initiated a similar suit against CMS in the Southern District of New York, arguing that CMS's execution and levy were invalid because Corporate Creations is not a proper agent for service within the meaning of CPLR 318 and 5232(a).[5] Following the decision in the *GTR Source* case, CMS sought to dismiss the suit based on issue preclusion. The district court (Failla, *J.*) agreed, finding that Simon's claims hinged on the same question of law at the heart of *GTR Source*: whether a judgment debtor is damaged by an improper

---

[5] As Simon pointed out, CPLR 5232(a) states that for service of an execution to be made on an agent, that agent must meet the specifications of CPLR 318, which Simon alleged Corporate Creations does not.

execution and levy when the seized property is used to satisfy a valid money judgment. *See generally Simon v. Cap. Merch. Servs., LLC*, No. 19-cv-904 (KPF), 2020 WL 615091 (S.D.N.Y. Feb. 10, 2020). Because *GTR Source* had already answered that question in the negative, the district court concluded that it would be improper to permit Simon to have another bite at the apple. *See id.* at *8–11. Nevertheless, the district court went on to state that had Simon been free to relitigate the issue, the court would have arrived at the same conclusion as the *GTR Source* court, namely, that FutureNet suffered no damages because the alleged conversion resulted in the property being used to satisfy a valid money judgment. *See id.* at *11–12.

Thereafter, both decisions were appealed to this Court by two of FutureNet's senior creditors, Plymouth Venture Partners, II, L.P. and Plymouth Management Company (together, "Plymouth"), who were assigned Simon's claims and permitted to substitute into the actions as appellants. Although the party driving these and other related litigations has changed over time, we refer to these entities collectively as "FutureNet" for simplicity's sake.

## II. Standard of Review

The parties ask us to review a variety of decisions decided at different procedural junctures across the two cases. But because each of those decisions ultimately turned on determinations of law, we review them all *de novo*. *See Yamashita v. Scholastic Inc.*, 936 F.3d 98, 103 (2d Cir. 2019) (Rule 12(b)(6) dismissal), *cert. denied*, 140 S. Ct. 2670 (2020); *Sung Cho v. City of New York*, 910 F.3d 639, 644 (2d Cir. 2018) (*Rooker-Feldman* doctrine); *ING Bank N.V. v. M/V Temara, IMO No. 9333929*, 892 F.3d 511, 518 (2d Cir. 2018) (summary judgment); *Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 919 (2d Cir. 2010) (issue preclusion).

## III. Discussion

Both appeals raise the same core question: whether FutureNet suffered damages from a procedurally improper execution and levy when the property seized pursuant to that execution and levy was used to satisfy a valid money judgment. But, before getting there, each appeal presents a threshold issue that we must address. With respect to the *GTR Source* appeal, GTR Source argues that we – and the district court – lack jurisdiction to hear the case because FutureNet's action is barred by the *Rooker-Feldman* doctrine. As for the *CMS* appeal, CMS argues that the district court correctly dismissed FutureNet's claims based on issue

11

preclusion. Although we conclude that neither of these threshold issues presents an impediment, we nevertheless find that the core question is an unsettled issue of New York law that merits certification to the New York Court of Appeals.

**A.      Jurisdiction &** *Rooker-Feldman* **Doctrine**

Under the *Rooker-Feldman* doctrine, federal district courts lack subject matter jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). The doctrine is a consequence of 28 U.S.C. § 1257, which "vests authority to review a state court's judgment solely in th[e] [Supreme] Court." *Id.* at 292. We have described the *Rooker-Feldman* doctrine as having four elements: (1) "the federal-court plaintiff must have lost in state court"; (2) "the plaintiff must complain of injuries caused by a state-court judgment"; (3) "the plaintiff must invite district court review and rejection of that judgment"; and (4) "the state-court judgment must have been rendered before the district court proceedings commenced." *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005) (internal quotation marks and brackets omitted). As *Rooker-Feldman* goes to subject matter jurisdiction, *id.*

12

at 83, it must be addressed first before the other issues raised on appeal, *see Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 430–31 (2007).

In the *GTR Source* case, the district court determined that GTR Source was unable to demonstrate the second element of the *Rooker-Feldman* test: that FutureNet's alleged injuries were *caused* by the state-court judgment. We agree.

"[T]he applicability of the *Rooker-Feldman* doctrine turns not on the *similarity* between a party's state-court and federal-court claims (which is, generally speaking, the focus of ordinary preclusion law), but rather on the *causal relationship* between the state-court judgment and the injury of which the party complains in federal court." *McKithen v. Brown*, 481 F.3d 89, 97–98 (2d Cir. 2007). The upshot of this rule is that *Rooker-Feldman* preclusion does not apply to claims seeking to redress injuries that "existed prior in time to the state-court proceedings." *Id.* at 98 (emphasis omitted).

FutureNet brought two prior actions in state court seeking to have GTR Source's underlying judgment vacated. The state court refused to grant relief. Naturally, if FutureNet's federal claims were based on harms flowing directly from those decisions or the underlying judgment, those claims would be precluded under *Rooker-Feldman*. But that is not this case. FutureNet now admits

13

that GTR Source's judgment is valid, and FutureNet is simply looking to recover damages related to an allegedly improper execution and levy. That is a separate inquiry from whether the judgment itself is valid. And, more to the point, the allegedly improper execution and levy (and any damages flowing therefrom) were not *caused* by the prior state-court judgment.

Consequently, we agree with the district court that it had jurisdiction to hear FutureNet's claims against GTR Source and the Marshal.

## B. Issue Preclusion

As for the *CMS* appeal, the district court concluded that the core legal issue underlying FutureNet's claims against CMS was decided against FutureNet in the *GTR Source* case and that, as a result, FutureNet was precluded from relitigating the issue. In reaching that conclusion, the district court acknowledged that the issue is one of pure law, but explained that, under federal preclusion law, issue preclusion still applies to purely legal issues unless policy considerations counsel otherwise. *See Cap. Merch. Servs.*, 2020 WL 615091, at *9 (citing *Env't Def. v. EPA*, 369 F.3d 193, 203 (2d Cir. 2004)). Finding no overriding policy considerations, the district court dismissed FutureNet's complaint. But while the district court's

14

reasoning might have been persuasive if *federal* preclusion law applied in this case, it does not.

The *GTR Source* case was before the district court based on the parties' diversity of citizenship. And as the Supreme Court has instructed, federal diversity judgments should be accorded the same preclusive effect that would be applied by state courts in the state in which the federal diversity court sits. *See Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 507–08 (2001); *see also Joseph v. Athanasopoulos*, 648 F.3d 58, 66 n.8 (2d Cir. 2011); *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 600 F.3d 190, 195 (2d Cir. 2010). Here, that means the preclusive effect of the *GTR Source* judgment is governed not by federal law, but by New York state preclusion rules.

"Under New York law, collateral estoppel bars relitigation of an issue when (1) the identical issue necessarily was decided in the prior action and is decisive of the present action, and (2) the party to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the prior action." *Evans v. Ottimo*, 469 F.3d 278, 281 (2d Cir. 2006). Importantly, however, the New York Court of Appeals has declared that issue preclusion is inapplicable to pure questions of law. *See Am. Home Assurance Co. v. Int'l Ins. Co.*, 90 N.Y.2d 433, 440 (1997) (explaining

15

that the plaintiff's arguments concern "a pure question of law," meaning that "the doctrine of collateral estoppel does not preclude [the plaintiff] from litigating that issue again"); *see also 11th St. Assocs. LLC v. City of New York*, 30 N.Y.S.3d 550, 551 (1st Dep't 2016) (same).

CMS does not dispute that the district court's conclusion in *GTR Source* turned on a pure question of law. Under New York law, then, issue preclusion is unavailable. *See Am. Home Assur.*, 90 N.Y.2d at 440. Consequently, we conclude that the district court erred in finding issue preclusion in the *CMS* case and reverse that portion of its decision. But, of course, that leaves the district court's alternative holding that FutureNet suffered no damages, which is identical to the holding by the district court in the *GTR Source* case.

## C.    Certification of the Issue of FutureNet's Damages

"We may certify a question to the New York Court of Appeals where that court 'has not spoken clearly on an issue and we are unable to predict, based on other decisions by New York courts, how the Court of Appeals would answer a certain question.'" *Ortiz v. Ciox Health LLC*, 961 F.3d 155, 158 (2d Cir. 2020) (quoting *Tire Eng'g & Distr. L.L.C. v. Bank of China Ltd.*, 740 F.3d 108, 114 (2d Cir. 2014)); *see also* 2d Cir. R. 27.2(a); 22 N.Y.C.R.R. § 500.27(a). "In deciding whether

16

to certify a question[,] we consider: (1) the absence of authoritative state court decisions; (2) the importance of the issue to the state; and (3) the capacity of certification to resolve the litigation." *O'Mara v. Town of Wappinger*, 485 F.3d 693, 698 (2d Cir. 2007). Each of these factors weighs in favor of certification here.

First, the Court of Appeals has not decided the specific question raised in these cases, and there is insufficient precedent from other New York courts to confidently predict how the Court of Appeals would resolve the issue. *See CFTC v. Walsh*, 618 F.3d 218, 231 (2d Cir. 2010) (observing that certification is appropriate where an issue has not been litigated often enough in New York courts to give rise to "sufficient precedents . . . to make a determination concerning [its] proper outcome" (internal quotation marks omitted)).

FutureNet argues that the executions and levies at issue in these cases did not comply with the requirements of Article 52 of the CPLR, specifically, CPLR 5232(a). As a result, FutureNet contends that the executions and levies were examples of "void or irregular process" and, therefore, "furnish[] no justification to [Defendants] for acts done under [them]."[6] *Day v. Bach*, 87 N.Y. 56, 60 (1881); *see also Fischer v. Langbein*, 103 N.Y. 84, 89–91 (1886); *Silberstein v. Presbyterian Hosp.*

---

[6] In this context, "process" is the execution or levy, and not the judgment itself. *See Williams v. Williams*, 23 N.Y.2d 592, 596 & n.1 (1969).

*in N.Y.C.*, 463 N.Y.S.2d 254, 255–56 (2d Dep't 1983).  In other words, FutureNet

maintains that the executions and levies must be treated as legal nullities, and that

Defendants therefore had no right to seize FutureNet's property, rendering them

liable in tort.  *See Tausend v. Handlear*, 68 N.Y.S. 77 (Mem), 33 Misc. 587, 590–91

(App. Term 1901); *V. Loewer's Gambrinus Brewing Co. v. Lithauer*, 73 N.Y.S. 947, 948

(App. Term 1901) (holding that "neither marshal had power to perform any official

function in Kings county[,] . . . [meaning] that all the defendant did there in the

way of taking and retaining possession of the property was tortiously done"), *aff'd*,

80 N.Y.S. 1150 (Mem) (1st Dep't 1903); *cf. Cla-Mil E. Holding Corp. v. Medallion*

*Funding Corp.*, 6 N.Y.3d 375, 379 (2006) (explaining that a marshal can be held liable

for damages he negligently inflicts on a judgment debtor while seizing property

pursuant to a judgment).[7]

Defendants counter primarily that FutureNet suffered no damages from the

executions and levies because, regardless of the procedures employed, the

---

[7] In addition to simply having money wrongfully removed from its account, FutureNet points out that Defendants' actions have harmed FutureNet's more senior creditors, such as Plymouth, by preventing FutureNet's limited funds from being distributed in accordance with creditor seniority.  *See, e.g., Lines v. Bank of Am. Nat'l Tr. & Sav. Ass'n*, 743 F. Supp. 176, 182–83 (S.D.N.Y. 1990).  While that may be so, this action has been brought only on FutureNet's behalf and so it is only FutureNet's damages with which we are concerned.  Had FutureNet's senior creditors wanted to sue on their own accounts, they could have done so, perhaps through a proceeding to determine adverse claims under CPLR 5239.

underlying money judgments are valid, and the seizure of FutureNet's funds satisfied those judgments (either in whole or in part) to FutureNet's benefit. Defendants further argue that FutureNet's sole remedy was to seek relief under CPLR 5240 (which permits courts to issue orders regulating judgment enforcement procedures) or CPLR 5222-a (which permits a judgment creditor to claim exceptions to execution), which the company failed to do.

To be sure, Defendants' argument is difficult to square with the rule that "[o]ne who has wrongfully taken property [ordinarily] cannot mitigate damages by showing that *he has himself* applied the property to the owner's use without his consent." *Higgins v. Whitney*, 24 Wend. 379, 381 (N.Y. Sup. Ct. 1840); *see also Ball v. Liney*, 48 N.Y. 6, 14–15 (1871); *Sam R. Levy Fabrics, Inc. v. Shapiro Bros. Factors Corp.*, 19 N.Y.S.2d 593, 596 (1st Dep't 1940) (explaining that whether damages were mitigated because the converted property was used to pay a valid obligation of the plaintiff "might depend on whether the application was at the instigation of the wrongdoer"); *Kelly v. Archer*, 48 Barb. 68, 72–73 (N.Y. Sup. Ct. 1866); *cf. MacGuire v. Elometa Corp.*, 592 N.Y.S.2d 730, 730–31 (1st Dep't 1993) (recognizing that even where a conversion results in no damages, the plaintiff may still be entitled to nominal damages and "should be given an opportunity to prove at trial

19

any other damages [it] sustained as a result of the conversion").  But it is possible that New York law recognizes a distinction in this context between a simple debt and a valid money judgment, and neither party identifies a New York Court of Appeals opinion addressing that precise issue.  In fact, two recent New York Supreme Court decisions have reached differing results on the topic.

In *Bam Bam Entertainment LLC v. Pagnotta*, the Supreme Court for Kings County rejected a judgment debtor's attempt to sue the New York City marshal in a factually similar scenario, concluding that the judgment debtor had suffered no damages.  75 N.Y.S.3d 804, 810 (Sup. Ct. 2018) (explaining that "the Plaintiff can[not] establish any damages as there simply is no dispute that the Judgment Debtor and the Plaintiff owe the money that was levied upon to pay the monies owed the Judgment Creditor").  But the Supreme Court for Ontario County reached the opposite conclusion in *Silver Cup Funding LLC v. Horizon Health Center, Inc.*, holding that a judgment creditor was required to pay restitution to a judgment debtor for a procedurally improper execution and levy, and indicating that, although that case was instituted under CPLR 5240, the judgment creditor "may have a cause of action for damages" in a separate plenary action.  135 N.Y.S.3d 631 (Table), 2020 WL 7550558, at *4 (Sup. Ct. Dec. 18, 2020).

20

Given that lower state courts have split on this issue, and absent clear guidance from the New York Court of Appeals, we conclude that certification of the question to the New York Court of Appeals is preferable to resolving it ourselves. *See Ortiz*, 961 F.3d at 159; *CFTC*, 618 F.3d at 231.

Second, resolving this issue involves making decisions and weighing competing interests that the New York Court of Appeals is better positioned to do in the first instance. On the one hand, a ruling for the plaintiffs could lead to an increase of suits against state officers who in good faith carry out instructions to execute on valid judgments. On the other hand, a ruling for the defendants could serve to immunize such officers from liability for wrongful conduct. Moreover, New York law is clear that New York state courts are vested with primary oversight authority over marshals. *See* N.Y.C. Civ. Ct. Act §§ 1605, 1608–1612. Finally, this case could affect the collection efforts made on tens of thousands of judgments issued by New York courts. Given the competing state interests at stake, this issue is therefore best answered by the New York Court of Appeals. *See Ortiz*, 961 F.3d at 159.

Third, the answer to the certified issue will no doubt control the outcome of the two cases before us. Should the Court of Appeals determine that no tort

21

damages exist in a scenario such as this, FutureNet's claims plainly cannot proceed. In the alternative, if the Court of Appeals decides that tort damages are available, the district courts' decisions would be undermined, and the cases would have to be remanded for further proceedings.

## IV. Conclusion

For the reasons stated above, we reserve decision and certify the following questions to the New York Court of Appeals:

(1) whether a judgment debtor suffers cognizable damages in tort when its property is seized pursuant to a levy by service of execution that does not comply with the procedural requirements of CPLR 5232(a), even though the seized property is applied to a valid money judgment; and, if so

(2) whether the judgment debtor can, under these circumstances, bring a tort claim against either the judgment creditor or the marshal without first seeking relief under CPLR 5240.

The Court of Appeals is not limited to the questions stated. Rather, the Court of Appeals may modify the certified questions as it sees fit and may direct the parties to address other issues that it deems relevant to the circumstances presented in this appeal. This panel will retain jurisdiction following the response of the New York Court of Appeals.

It is therefore **ORDERED** that the Clerk of this Court transmit to the Clerk of the Court of Appeals of the State of New York a Certificate, as set forth below,

22

together with complete sets of briefs and appendices, and the records filed in this Court by the parties.

## Certificate

The foregoing is hereby certified to the Court of Appeals of New York pursuant to Second Circuit Local Rule 27.2 and New York Codes, Rules, and Regulations Title 22, § 500.27(a), as ordered by the United States Court of Appeals for the Second Circuit.